IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2025 OCT 22  PM 12: 00

OFFICE OF THE CLERK

UNITED STATES OF AMERICA,

        Respondent,

vs.                        Case No. 8:24-CR-00024

ZACHARY MCELDERRY,

        Defendant.

---

## MEMORANDUM OF FACT AND LAW IN SUPPORT OF 28 U.S.C. 2255 PETITION

---

COMES NOW, Zachary McElderry, the defendant, acting In Propria Persona, and herein respectfully moves this Honorable Court with the defendant's memorandum of fact and law in support of 28 U.S.C. 2255 petition.


All done for "GOOD CAUSE" defendant shall aver as follows:


### HISTORY OF THE CASE

On or about January 31, 2024, Drug Enforcement Administration (DEA) Task Force Group 1 (TFG 1) conducted a controlled purchase of approximately one pound of Methamphetamine in Ohaha Nebraska from Zachary McElderry.  On February 7, 2024, DEA TFG-1 agents received information McElderry was in possession of more than one pound of crystal methamphetamine.  DEA TSF-1 agents attempted a preplanned arrest at QT Gas Station, 6045 L. St., Ohaha, Nebraska, McElderry was identified as being the driver of a white Chevrolet Yukon

-1-

bearing Nebraska lisence plate YXS-066. McElderry fled in his vehicle, he continued to drive in a reckless manner to avoid arrest. It was alleged that during the high speed pursuit a black bag was thrown from the vehicle. After a short chase McElderry was taken into custody and placed under arrest. McElderry was later indicted and charged with Count 1:

> Possession with Intent to Distribute 500 Grams or More of Methamphetamine 21 U.S.C. Section 841(a)(1), 841(b)(1)A) And 851 information- 15 years to life

McElderry arrest date was February 7, 2024. The Grand Jury indicted McElderry on February 21, 2024. On March 20, 2024, and information of Prior Conviction was filed, which noted that pursuant to this provision of 21 U.S.C. Section 851 and enhanced penalty was sought as a result of his prior conviction for serious drug felony.

On August 21, 2024, the defendant appeared before Chief Judge Robert F. Rossiter., whereas, he entered a (Open Guilty Plea) to count 1 of the indictment. It must be stated there was No plea agreement in this case. On or about November 14, 2024, McElderry was sentenced to a term of two hundred and fifty months imprisonment.

McElderry's attorney failed to file the "Notice of Appeal" in this action. Thereby, no other litigations has been put forth on McElderry's behalf.

## JURISDICTION OF THE COURT

28 U.S.C. section 2255(a) allow "[a] prisoner in custody under sentence ...claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

sentence...or is otherwise subject to collateral attack, may move
the court which imposed the sentence to vacate, set aside or correct
the sentence." Section 2255 is intended to rpovide a federal prisoner
a remedy for jurisdictional or constitutional errors. <u>Sun Bear v.
United States,</u>  644 F.3d 700, 704 (8th Cir. 2011).


## HAINES v.KERNER,404 U.S. 519 (1972)

Keeping in mind that complaints filed by pro-se litigants are held to
less stringent standards than those applied to formal pleadings
drafted by lawyers. See Haines v Kerner, 404 U.S. 519, 520  (1972).


### STATEMENT OF FACTS

1. On November 14, 2024, the defendant, during sentencing this
this Court informed Defendant that he had a right to appeal and has
ten (10) days to file notice of appeal.  Defendant informed counsel
that he wished to file the notice of appeal on his behalf, he wanted
to appeal the unreasonableness of sentence.    Therefore, counsel
was fully aware that defendant wanted the necessary paperwork filed.


2. Defendant advised defense counsel fully after sentencing that
he wanted to talk to him concerning, the appeal.  Defense counsel
advised Defendant that he would come over to the detention center
and talk with him concerning the appeal.    **See Attachment "A"**
Petitioner Declaration.


3. Defendant as of the date of this has written to counsel trial
counsel formally requesting a copy of the files generated during the
course of representation.  Petitioner never consulted with counsel

concerning his appeal.  **See Attachment "A"** Defendant's Declaration.
Defendant wrote a letter to the Clrk of Court and requested a copy of
Criminal Docket Sheet so he could verify whether defense counsel filed
his requested notice of appeal.  **See Attachment "B**  A copy of the
Defendant's Letter to the Clerk's Office.


    4.  On _____, 2025, the Clerk of this Court mailed
Defendant a copy of the Criminal-Docket Entry Sheet which shows that
counsel never filed Defendant's requested notice of appeal.  **See
Attachment "C".** *Never received after requesting*

-4-

# ISSUE 1

**THE SENTENCE IS UNCONSTITUTIONAL BECAUSE DEFENDANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

**Legal Standard**

Claims of ineffective assistance of counsel are governed by the Supreme Court's decision in <u>Strickland v Washington</u>, 466 U.S. 668, 687-88 (1984). To succeed on a claim of ineffective assistance of counsel a defendant must show that: (1) the attorney's respesentation fell below an objective standard of reasonableness, and (2) there is a reasonable proability that except for the attorney's unprofessional errors, the results of the proceedings would have been different. <u>Roundtree v United States</u>, 751 F.3d 923, 925 (8th Cir. 2014)(citing <u>Strickland v Washington</u>, 466 U.S. 668 (1984)).

In the case-at-bar defense counsel Yvonne D Sosa committed several unprofessional errors and omissions that amounted to performance below an objective standard of reasonableness for counsel in a criminal case. Petitioner asserts that counsel committed the following errors and omissions.

**Defendant asserts that Counsel was ineffective for failing to perfect Defendant's requested notice of appeal and failing to consult with Defendant after sentencing concerning the appeal**

Defendant asserts that under Rule 4(b)(1)(A) of the Federal Rule of Criminal Procedure, in a federal criminal case a defendant has the right to file a notice of appeal within fourteen (14) days after entry of judgment. This rule provides the mechanism by which a defendant may seek review of his conviction and sentence by the Court of Appeals.

Following the imposition of sentence in this matter, the Defendant expressly instructed trial counsel to file the notice of appeal. Despite these clear directions, counsel failed to act.  Not notice of appeal was filed within the time allowed by law.

The failure of defense  counsel to file a notice of appeal when instructed to do so constitutes ineffective assistance of counsel under prevailing constitutional standards.  The Supreme Court has long recognized that depriving a defendant of the opportunity to appeal, by counsel's omission, is a violation of the Sixth Amendment right to effective assistance of counsel.  An attorney's failure to file notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required. Sellner v United States, 773  F.3d 927, 930 (8th Cir. 2014)  Even if the client waived his/her right to appeal as part of a plea greement, prejudice is presumed if he/she ask the attorney to file the notice of appeal and the attorney did not do so.

    In Sellner, the court found that a movant's written statement in support of her section 2255 motion that she asked her attorney to appeal was not contradictory and contained similar similar specificity to her trial counsel's affidavit denying that any such request was made. Because "the district court is not permitted to make credibility determination on the affidavits alone,"  the court held that an evidentiary hearing was required.  Id. at 929-30.

Because Defendant's constituional right to appeal was denied through no fault of his own, Defendant respectfully request that this Court grant appropriate relief.  Such relief includes vacating the judgment

-6-

so that a timely notice of appeal may be filed, or otherwise reinstaing Defendant's right to appeal.

Defendant further contends that such unprofessional errors and omissions by counsel constitutes ineffective assistance of counsel. See Roe v Flores-Ortega, 528 U.S. 470 (2000)  The Supreme Court held in Flores-Ortega reaffirming the well-settled rule that an attorney who fails to file an appeal on behalf of the client who specifically request it acts in a professional unreasonable manner pre se.  Id. at 477 (citing Rodrigez v United States, 395 U.S. 327 (1969)).  See United States v Luke, 686 F. 3d 600, 606 (8th Cir. 2012)(recognizing that failure to file an appeal constitutes ineffective assistance of counsel for purposes of section 2255 where the client specifically instructed counsel to file an appeal.)  Thereby, Defendant meets the first of the Strickland, test.

As to the second prong of the Strickland, test, the Flores-Ortega court held the failure to file an appeal that the defendant wanted filed denied the defendant his constitutional right to counsel at a critical stage.  Id. at 483.  In such cases, prejudice is presumed because rather than being denied the opportunity for a fair proceedings the defendant is denied the opportunity for a proceeding at all.  Id. (citing Smith v Robbins, 528 U.S 259, 286 (2000); Penson v Ohio, 488 U.S. 75, 88-89 (1988); United States v Cronic, 466 U.S. 648, 659 (1984).  Defendant is entitled to an out-of-time appeal regardless of whether he can identify any arguable meritorous ground for his appeal. See Gomes Diaz, 433 F.3d at 793.  Defendant asserts this reasoning.

-7-

## ISSUE II

**DEFENDANT ARGUES THAT COUNSEL WAS INEFFECTIVE FOR HIS FAILURE FOR A DOWNWARD DEPARTURE BASED ON THE DISTINCTION MADE IN THE SENTENCING GUIDELINES BETWEEN METHAMPHETAMINE (ACTUAL) AND METHAMPHETAMINE MIXTURE AS IT RELATES TO A DETERMINATION OF THE BASE OFFENSE LEVEL**

Defendant argues that counsel was ineffective for not arguing a purity distinction between actual methamphetamine and methamphetamine mixture that would have reduced his base offense level from 36 to 30, resulting in less prison time.

A sentence within the guidelines range is not presumably reasonable, rather, the Court makes an individualized assessment based on the facts of each case. Gall v. United States, 552 U.S. 38, 50 (2007). Should the Court then find a variance is appropriate, it must consider the extent of the deviation and ensure that there is correspondingly compelling justification. Ultimately, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes of 3553(a)(2).

The guidelines sentencing range will roughly approximate a sentence that would achieve the objectives of the 3553(a). Kimbough v. United States, 552 U.S. 85, 109 (2007). These ranges are typically the product of the Sentencing Commission's careful study and are "based on extensive empirical evidence derived from the review of thousands of individuals sentencing decision." Gall, 552 U.S. at 46. That's not true in all cases, and in those circumstances, the Court may vary up of down on a case-by-case basis, after making an individualized determination that the guidelines would yield an excessive (or unduly lenient) sentence. Spears v United States, 555U.S. 261, 265 (2009)(per curiam).

-8-

Under today's sentencing scheme the Court can go further than that. This Court has discretion to categorically reject a guideline based on policy grounds, when the Court finds that the guideline consistently yields sentences greater than necessary to acheive the purposes of section 3553(a). See Kimbrough, 552 U.S. at 101-102;  see also Spears, 555 U.S. at 265-66.  In Kimbrough it was reasoned that

> In the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation  of sentences that might achieve section 3553(a) 's objectives.  The sentencing judge, on the other hand, has greater familiarity with the individual case and the individual defendant before him than the Commission or the appeals court.  He is therefore in a superior position to find facts and judge their import inder section 3553(a) in each particular case.  In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the "heartland" to which the Commission intends individual Guidelines to apply.  On the other hand,while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect section 3553(a) considerations even in a mine-run case. 128 S. Ct. at 574-75 (clean up).  But the Court's discretion to vary from the guidelines on policy grounds, even in mine-run cases, is broadest when the guidelines at issue "do not exemplify the Commission's exercise of its characteristics instituional role."  Id. at 575.

-10-

Considering these applied principles, we then turn to the specific
argument advanced here:  that the 10 to 1 ratio treating 1 gram
of methamphetamine (actual) as the equivalent of 10 grams of a
methamphetamine mixture, see section 2D1.1(c)(1)-(12), generally
results in sentencing calculations inconsistently with section
3553(a).  An impressive and growing number of counts have concluded
that it does.  E.g. United States v Van Long, 2023 U.S. Dist.
LEXIS 18597 (D. Idaho Feb. 2, 2023); United States v Robinson,
No. 3:21-cr-14, 2022 U.S. Dist. LEXIS 231041 (S.D. Miss. Dec. 23,
2022); United States v Carrillo, 440 F. Supp. 3d 1148, 1154-55
(E.D. Cal. 2020);  United States v Moreno, 583 F. Supp. 3d 739,
739 (W.D. Va. 2019); United States v Johnson, 379 F.Supp.3d 1213,
1226 (M.S. Ala. 2019);  United States v. Rodriguez, 382 F. Supp.
3d 892, 897-98 (D. Alaska 2019);  United States v Beans, 371
371 F. Supp. 3d 46, 55-56 (D.N.H. 2019);  United States v Pereda,
NO. 1:18-CR-228, U.S. Dist. LEXIS 19183 (D. Colo. Feb. 6th, 2019)
United States v Ferguson, No. 0:17-CR-204, 2018 U.S. DIst. LEXIS
129802 (D. Minn. Aug. 2, 2018;  United States v Harry, 313 F.
Supp.3d 969, 974 (N. D. Iowa 2018); United States v. Nawanna,
321 F. Supp. 3d 943, 955 (N.D. Iowa 2018);  United States v.
Ibarra-Sandoval, 265 F. Supp. 3d 1249, 1251 (D.N.M. 2017).


Reading United States v Kaufman, No. 2:18-CR-36, 2019
U.S. Dist. LEXIS 118725 (D. Me. July 17, 2019). Holding that
is premised on four primary grounds:
The 10 to 1 actual to mixture ratio ins't ground in any empirical
evidence generated by the Sentencing Commission,
methamphetamine purity is no longer a useful proxy-if indeed,
it ever was for the relative culpability of a defendant.  Here,

-11-

McElderry asserts this reasoning.  The 10 to 1 ratio creates known unwarranted major sentencing disparities among defendants convicted of methamphetamine crimes, and the multiplier applied to defendants convicted of crimes involving methamphetamine (actual) creates unwarranted sentencing disparities between those convicted of other drug crimes.  It is well established that the drug trafficking guidelines don't actually reflect the Sentencing Commission's exercise of its institutional role and collection of empirical data-rather the Commission chose to anchor the drug trafficking guidelines to the mandatory minimum sentences that Congress established for drug offenses.  Gall, 552 U.S. at 46 n.2 ; see Kimbrough, 552 U.S. at 96-97.  This 10 to 1 ratio appears to be grounded in **nothing more than the presence of the same ratio in the Anti-Drug Abuse Act** of 1988.  (outdated at the least) See United States v Hayes, 948 F. Supp. 3d 1009, 1023 (N.D. Iowa 2013); see also Van Long, 2023 U.S. Dist. LEXIS 18597; Moreno, 583 F. Supp. 3d at 742; cf. Bean, 371 F. Supp. 3d at 51.


Secondly, it appears that rationale for imposing additional punitive punishment based on drug purity is that the purity of the controlled substance...is probative of the defendant's role or position in the chain of distribution.  This subjective thought process is outdated because by government's own latest statistics almost all methamphetamine  on the streets is above 90 percent pure.  Controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics use to be considered an indication

-12-

of being a prominent role in the criminal enterprise and proximity
to the source of drugs.  Again by reviewing the modern government
statistics this subjective thought process would be rendered now as
outdated to be viewed as large quantities are normally associated
with high purities, this factor is particularly relevant where
smaller quantities are involved.  Section 2D1.1. cmt. n. 27(c);
see Robinson, 2022 U.S. Dist. LEXIS 231041; Carrillo, 400 F. Supp.
3d at 1154;  Johnson, 379 F. Supp. 3d at 1223;  Bean, 371 F. Supp.
3d at 52 ;  United States v Trejo, 624 F. App'x. 709, 714 (11th
Cir. 2015).

This might have been true whenever methamphamine involved a
conspiracy of people harvesting pseudoephedrine to cook in a secluded
trailer.  But its not true in a world in which most of the street
methamphetamine produced on an industrial scale and/or smuggled
into the United States.  To end this line of thought with the ready
availability of methamphetamine (actual) to everyone in the chain
of distribution, from the kingpin to the mule to the end user, has
utterly severed any connection between the purity of the drug and
the defendant's position in the criminal enterprise-and as a result,
contrary to § 3553(a), the guideline is treating all of them as if
they are kingpins.  Defendant asserts this reasoning in the case-at
bar.  Defense counsel utterly failed to argue this before the
sentencing court during the sentencing phase, thus, rendering
ineffective assistance of counsel.

But that does not mean everyone is treated alike.  Instead,
differing outcomes are driven by whether or not methamphetamine is
tested for purity in the first place.  Courts have observed, whether

-13-

or not testing occurs or all of the methamphetamine for which the
defendant is being held responsible for is largely dependent on
arbitrary conditions that have no bearing on the § 3553(a) factors
which should be driving the sentencing decisions.  See Van Long,
2023 U.S. Dist. LEXIS 18597;  Moreno, 583 F. Supp. 3d at 744:
Pereda, 2019 U.S Dist. LEXIS 19183;  Rodriguez, 382 F. Supp. 3d
at 897; Ferguson, 2018 U.S. Dist. LEXIS 129802;  Ibarra-Sandoval,
265 F. Supp. 3d at 1236.


Counsel should have raised the question of which direction the
Court should move to alleviate the discrepancy.  After all, if
nearly all methamphetamine is pure, then it might be reasonable to
solve the problem by assuming that untested methamphetamine is
also pure.    But that would perpetuate the other problem with
the methamphetamine guidelines at question; the unjustifiably
harsh treatment of methamphetamine (actual) vis -vis other
controlled substances.  See Moreno, 583 F. Supp. 3d at 744; Bean,
371 F. Supp. 3d at 53-54; Harry, 313 F. Supp. 3d at 972-73.
By way of illustration:  Under 2D1.1(c)(3)-(8), 500 grams of
methamphetamine (actual) merit a base level offense of 34, while
500 grams of other common street drugs result in base level offense
of 30 (fentanyl) and crack cocaine), 26 (heroin) or 24 (cocaine).
Assuming no criminal history and no other adjustments to the
offense level, that would mean that a defendant with 500 grams of
methamphetamine (actual) would face a guidelines sentence of  151
to 188 months, while a defendant with 500 grams of fentanyl or crack
would face only 97 to 121 months imprisonment.  See U.S.S.G. § Ch. 5
Pt.A.  Defendant is currently unaware of **any empirical basis to**

-14-

conclude that methamphetamine (actual) demands that much more of a draconian punishment per gram than these other street drugs. This defendant asserts this reasoning and that counsel failed to argue any of these presented factors to this court during sentencng. Thus, defendant argues that counsel's ineffectiveness caused the Court to impose a sentence greater than necessary to acheive the required punishment and warrants full review of the guidelines as applied and the changes which will come into play on November 1st, 2025 to the Sentencing Guidelines.. These changes to the Sentencing guidelines will level the playing field for actual vis mixture of methamphetamine purities. Eliminating the 10 to 1 sentencing factors under which this defendant was sentenced. Defendant suffered actual prejudice by counsel's lack of performance during sentencing.


## III

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE DURING THE SENTENCING PHASE FOR FAILING TO OBJECT TO THE PSR IMPROPER INCREASE OF THREE LEVEL ADJUSTMENT WHICH INCREASED THE POSSIBLE APPLICABLE SENTENCE**


Defendant argues that defense counsel's performance fell below an objective standard of reasonableness where counsel failed to file objections by (motion or orally) prior to sentencing. As such, defendant was assessed a three level upward adjustment for a prior conviction which was factually a non-qualifier.

Defendant argues that the PSR at # 47 assessed 3 points for a conviction which is inapplicable for use. Where the actual term

-15-

of imprisonment exceeded more than a year.    PSR # 47 Receiving
Stolen Property 09/02/2009 Douglas County District Court, Omaha
NE, Docket No.  Cr10-9073914.  Defendant states a fact that counsel
utterly failed to retrive the  "Shephard" document in this case and
attached case inwhich defendant was sentenced to on the same day.


Possess Controlled Substance, Douglas County District Court, Omaha
Ne. CR10-9075069.  PSR # 48


The records reflect that this case was factually joined when defendant
was sentenced on 07/20/2011.    These sentences were combined during
the sentencing phase.  Defendant **did not serve the required more
than one year provision under 21 U.S.C. § 802[58]-[59].**  This provision
states:
    The term "serious violent felony" means
    (A) an offense described in section 3559(c)(2) of title 18,
        United States Code, for which the offender served a term of
        imprisonment of more than 12 months, and


Shephard documents from the Department of Corrections would have
revealed that defendant served less than a year actual time on
both of these case combined.  Therefore, the three points that was
assessed on the PSR must be removed and a new PSR done minus these
three (3) points reducing the over-all from Offense level 37 to a
level 34.  (see PRS # 84).  This adjustment alone changes the
sentencing guidelines range to 210 to 262.    Defendant was sentenced
to 250 months which is still above the very minimum this court could
have concidered had counsel reviewed and pulled the Shephard documents.
Defendant asserts this reasoning.

-16-

weigh in favor of a sentence reduction"); United States v Maumau,
993 F. 3d 821, 837 (10th Cir. 2021)("A combination of factors warrant
relief, including [the defendant's] age at the time of sentencing);
United States v Crutcher, 2021 U.S. Dist. LEXIS 126230 (N.S. OKLA.
July 7, 2021)("Considering [the defendant's conviction at a relatively
young age, receiving what amounted to a life sentence, and his efforts
at rehabilitation, the Court finds extraordinary and compelling
circumstances which form a basis for relief.").


    In United States v Ferebe, 2023 U.S. Dist. LEXIS 185047 (D.Md.
Oct. 16, 2023), the court held that in the years since Ferebe was
sentenced, the Supreme Court has placed increased importance on the
role of youth in sentencing.  As the Supreme Court has since explained,
"developments in psychology and brain science" have revealed the need
to place children and adults in "constitutionally different categories
"for purposes of sentencing" because of the "diminished culpability"
and increased "prospects for reform" during the stages of adolescent
psychological development.  See Miller v Alabama, 567 U.S. 460, 471-72
(2012)(quoting Graham v Florida, 560 U.S. 48, 68 (2010)).  These
constitutional decisions draw "the line at 18," the Court has also
recognized that the "qualities that distinguish juveniles from adults
do not disappear when an individual turns 18."  Roper  v Simmons, 543
U.S. 551, 574 (2005).  Adapting to this understanding, courts now
"consistently reject life sentences for those who commit crimes, even
heinous crimes, in the "immaturity, irresponsibility, impetuousness,
and recklessness' of youth," including  in the years after a defendant
turns eighteen.   Defendant states that these presented facts were in
negated by counsel who failed to inform this court of developments that
warranted the reduction of the sentence in his case.  Defendant asserts

-17-

IV

**INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR THEIR FAILURE TO FILE OBJECTIONS TO THE PRESENTENCE REPORTS POINT ASSESSMENT FOR PRIOR CONVICTIONS COMMITTED WHILE UNDER THE AGE OF TWENTY FIVE**

Defendant states a fact, the presentence report assessed a total criminal history score of nine (9).    A criminal history score of nine (9) establishes a criminal history category of IV.  Defendant contends that had counsel reviewed and understood the United States Sentencing Guidelines they would have filed the proper objections to all nine  (9) of the points assessed to criminal history because six (6) of the assessed points to criminal history were for prior convictions committed while under the age of twenty-five (25) which is the cut off point for the youthage maturity of the male adults brain.    These facts should have been putforth during the sentencing phases.  Had these facts been accepted and putforth during sentencing the criminal history assessment would have beeen reduced from a nine (9) to a three (3). **(See PSR at numbers 47, 51)**

### EXAMINATION OF YOUTH CONVICTIONS

The defendant has a criminal history which goes back to the age of six (6).  Then continued to commit criminal acts which should have be questionable for point assessment by the court, age twenty-two (22). **(See PSR numbers 40 – 51)**  Court now recognize during the assessment phases youthful (age) prior convictions and which should be allowed for the Criminal History Point consideration pursuant to the U.S.S.G. In United States v Brooker, 976 F. 3d 228, 238 (2nd Cir. 2020)("The defendant's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps

-18-

this reasoning before this court.

## CONSIDERATION OF U.S.S.G. § 5H1.1 AGE (POLICY STATEMENT)

Age may be relevant in determining whether a departure is warranted

Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration

A downward departure also may be warranted due to the defendant's **youthfulness** at the time of the offfense or **prior offenses.** Certain risk factors may affect a youthful individual's development into the mid 20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of education opportunites, and familial relationships.  In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influences as their brains continue to develop into young adulthood.  Youthful individuals also are more amenable to rehabilitation.

The PSR reflects that defendant was placed in a foster home around the age 15, because of family substance abuse problems.  Which signalled to him that drugs were a way of life.  Leading him down the dark lonely path of destruction to addiction.  See **PSR at 70-71**  In March of 2024, Defendant was diagnosed with **sever methamphetamine use disorder and moderate cannabis use disorder.**  During the early youthful years at age 14 he was in the Douglas County Drug Court Program for drug

-19-

use and after-care.    Although the PSR revealed the above fact within,
counsel utterly failed to demonstrate that his youthful development had
in fact be stagnate.    Placing his mental development at 30 probably
in the ranges of early twenties.    Defendant asserts this reasoning
should have been adequately presented by counsel during sentencing.
Had counsel presented these fact in the proper light for consideration
is seems more likely than not, that a downward departure would have
be applicable.        **SEE AMENDMENT 829, effective date November 1, 2024.**

## **Conclusion**

Defendant contends that he is not looking to retrack the guilty plea, but, due to the many grave inconsistencies in the PSR and counsel's failure to indicate these to Court, he seeks a evidentiary hearing. Counsel's gross ineffectiveness during the critical stages caused the record to be void of these inconsistencies, which warrant a three to six point reduction in Mr. McElderry's Criminal History score. Such a REDUCTION creates disparity in the sentences which are available to this court. An example of this is: Adjusted Criminal History from a IV to a III- 235 to 293; from a III to a II -.210-262. Although this is within the current sentence range we then must look to the Offense level which was a 36 for the methamphetamine (actual) compare to methamphetamine (mixture) would bring the offense levels down - let's assume 6to 8 levels. This would bring the range down for six level reduction in the offense level equals 121-151: An 8 offense level reduction equals 97 to 121 months. This demonstrates great disparity in the applied sentence and the sentence defendant should have incurred.


**WHEREFORE,** defendant prays that this Honorable Court shall now grant an evidentiary hearing to resolve this dispute should the government file an objectionto any part of defendant's claim.


DONE this the _____ day of _____, 2025 A.D.


Respectfully submitted,

_____

Zachary McElderry, pro-se

cc.
    P/File

## CERTIFICATE OF SERVICE

I, Zachary McElderry, herein state that a true, correct, certain and complete copy of the foregoing motion was placed in the hands of a mailroom employee at the FCI Leavenworth with first-class pre-paid postage affixed to the envelope addressed to the following:

Clerk of Courts

DONE this the 10th day of _October_ , 2025 A.D.

Zachary McElderry

**ATTACHMENT   A**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA


UNITED STATES OF AMERICA,

                               Respondent,     DECLARATION OF
                                          ZACHARY MCELDERRY

                                v.            Case No. 8:24-CR-00024

ZACHARY MCELDERRY,         Defendant.

---

Zachary McElderry hereby declares:

    **1. Declarant declares,** that after being sentenced he advise counsel to file the "notice of appeal" which the court informed him of.  Declarant states a fact that he wished to appeal the sentence imposed by the district court.   After discovering the fact that the notice of appeals was never filed as he directed counsel to do he now pursues § 2255 to correct the injustice of losing this right to have the record reviewed by the Eighth Circuit Court of Appeals.  Declarant believes this was intentionally done by counsel. Declarant questioned the harsh length of the imposed sentence and the reasonableness.


    **2. Declarant declares,** that he inquired as to why counsel did not object to the prior convictions qualifying for use for additonal points assessment during sentencing.  Declarant states that he tried to explain to counsel that he did not serve a term of incarceration greater than a year on the 2011 conviction (PSR # 51) and that they joined two cases together to form the applied sentence in those cases.  Counsel utterly failed to bring these facts to the attention of the sentencing court.

3. **Declarant declares**, that counsel failed to confir with him on the questions of a reasonableness sentence from the sentencing court and that it was his belief that the PSR assessed an increased amount of points which should have been negated because they were factually inapplicable. Counsel failed to request what's termed the "Shephard" document as directed because they would have proven the actual amount of prison term that was done on the cases at issue.

**WHEREFORE**, the declarant states that all contained within this Declaration if truth as best that he recalls.

DONE this 14 day of October , 2025 A.D.

Zachary McElderry,
In Propria Persona

cc. p/file

ATTACHMENT  B

C

Zachary McElderry
Reg. No. 98929-510
FCI Leavenworth
P.O. Box 1000
Leavenworth, Kansas   66048-0000

August 28,2025

Clerk of Courts
U.S Courthouse
111 South 18th Plaza, Suite 1152
Omaha, Nebraska   68102

Re:  U.S.A. v Zachary McElderry
     Case No.  8:24-CR-00024

Dear Honorable Clerk of Courts:

Please provide the above defendant with a true correct copy of
the active docket sheet for the above entitled case.  I was sentenced
on November of 2024, whereupon I requested that an Notice of Appeal
be filed to the Eighth Circuit Court of Appeals on my behalf.  To
date I have heard nothing more.  Therefore, the docket sheet will
reveal whether this was filed.

Respectfully submitted,

Zachary McElderry

cc.

    P/File

ATTACHMENT   C

Zachary McElderry
Reg.No. 98929-510
FCI Leavenworth
Leavenworth, KS   66048-0000

                                        August 28, 2025

David R. Stickman Attorney at Law
Federal Public Defender
222 South 15th Street,   STE 300N
Omaha, Nebraska   68102

Re:   U.S.A. v Zachary McElderry
      Case No. 8:24-CR-00024

Dear Mr. Stickman:

       Since incurring the prison sentence in November of 2024 I
have been pursuing learning the how's and why's of this federal
system.   I need a copy of the files generated during the course of
your tenure.   Please whenever the opportunity presents itself send
me a copy of such.   I appreciate the help in recovering this
information.

Thank you.

                                   Sincerely,
                                   Zachary McElderry

cc.

    P/File